**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| **William Hanson**, | : | |
| 15-1251 Railroad Ave. | : | |
| Keaau, HI 96749 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: ___3:20cv733_____ |
| | : | |
| **Hatchify, Inc.**, | : | |
| 1810 MacTavish Ave. | : | |
| Richmond, VA 23230 | : | |
| | : | |
| **Christopher Bache**, | : | |
| 9011 Brigadier Road | : | |
| Mechanicsville, VA 23116 | : | |
| | : | |
| and | : | |
| | : | |
| **William Violante**, | : | |
| 5548 Charter Oak Drive | : | |
| Chesterfield, VA 23832 | : | |
| | : | **TRIAL BY JURY DEMANDED** |
| Defendants. | : | |
| | : | |

**COMPLAINT**

COMES NOW, the Plaintiff, Will Hanson ("Plaintiff"), by and through his undersigned

counsel, and moves this Honorable Court for judgment against Defendants, Hatchify Inc.

("Hatchify"), Christopher Bache ("Mr. Bache"), and William Violante ("Mr. Violante")

(collectively "Defendants"), on the grounds and praying for the relief hereinafter set forth:

**PARTIES**

1.      Plaintiff is an individual permanently residing in the state of Hawaii since July 2019, and

1

formerly a resident of the state of West Virginia.

2.      Defendant, Christopher Bache, is an individual residing in the County of Hanover in the Commonwealth of Virginia; specifically, 9011 Brigadier Road, Mechanicsville, VA 23116. Mr. Bache is a co-founder, current director, and shareholder of Hatchify.

3.      Defendant, William Violante, is an individual residing in the County of Chesterfield in the Commonwealth of Virginia; specifically, 14305 Chimney House Road, Midlothian, VA 23112. Mr. Violante is a co-founder, current president, and shareholder of Hatchify.

4.      Defendant, Hatchify, Inc., is a Delaware stock corporation, with its principal place of business located at 1810 MacTavish Ave, Richmond, VA 23230. Hatchify, Inc., was incorporated in the State of Delaware on March 15, 2019, Delaware Division of Corporations File No. 7327798, and was received its certificate of authority to transact business in the Commonwealth of Virginia on June 20, 2019, Virginia State Corporation  Commission (the "SCC") Entity ID F2127498.

5.      Defendant, Hatchify, Inc., is *de facto merger* between itself and Virginia stock corporation Hatchify, Inc., SCC Entity ID 08324170 ("Original Hatchify"). Original Hatchify was formed by Mr. Bache as a limited liability company under the name Adammatic, LLC in the Commonwealth of Virginia on November 20, 2014, Entity ID S5333853. On or about April 6, 2016, Mr. Bache filed a certificate of assumed or fictitious name for Adammatic, LLC with the SCC to do business as "Hatchify". On or about June 6, 2018, Articles of Conversion were filed with the SCC to convert Adammatic, LLC to Original Hatchify. On May 9, 2019, Articles of Termination and Articles of Dissolution were filed with the SCC to voluntarily terminate the existence of and dissolve Original Hatchify.

## JURISDICTION AND VENUE

6.      This action is brought by Plaintiff for damages on account of Defendants', as applicable,

tortious inference with a contract (or business expectancy), breach of contract, unjust

enrichment, fraud in the inducement, and statutory and common law conspiracy.

7.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiff is a

citizen of the State of Hawaii and Defendants are citizens of the Commonwealth of Virginia;

specifically, Hatchify's principal office is located in Richmond, VA, Mr. Bache resides in

Mechanicsville, VA, and Mr. Violante resides in Midlothian, VA. The amount in controversy, as

discussed *infr*a and requested in the *ad damnum* clause, exceeds $75,000.00, exclusive of costs

and interest.

8.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28

U.S.C. § 1367 as Plaintiff's claims are so related to the claims within the Court's original

jurisdiction that it forms the part of the same case or controversy.

9.      This Court has *in personam* jurisdiction over Defendants pursuant to Fed. R. Civ. P.

4(k)(1)(A) and Virginia Code § 8.01–328.1(A)(1)-(3) and (6). Hatchify expressly transacts

business and supplies services in the Commonwealth of Virginia (Subparts (A)(1)-(2)), and all

Defendants use real property in and caused tortious injury by an act or omission in the

Commonwealth of Virginia (Subparts (A)(3) and (6)).

10.     Venue is proper in the Eastern District of Virginia, Richmond Division, pursuant to 28

U.S.C. §§1391(a)(2)-(d) and L. Civ. R. 3(C) because all Defendants reside and a substantial part

of the events or omissions giving rise to the claims set forth in this Complaint occurred in this

judicial district and in this division.

## STATEMENT OF FACTS

11.     On or about March 13, 2017, Plaintiff entered into a contract with Realkey, Inc., a California corporation ("RK"), to provide consulting services ("RK Agreement"). A copy of the RK Agreement is attached hereto as **Exhibit A**, and incorporated herein by such reference.

12.     The income Plaintiff earned from the RK Agreement was considerable and continued far past the effective date identified in the RK Agreement, resulting in $18,750.00 per month as of November 13, 2018.

13.     In December 2018, Original Hatchify demanded that Plaintiff terminate the RK Agreement with RK "or else".

14.     In response thereto, Christopher Hussain, Chief Executive Officer of RK, reached out to and discussed with Original Hatchify Plaintiff's continued work under the RK Agreement.

15.     As a result of the communication between RK and Original Hatchify, RK threatened to terminate the RK Agreement with Plaintiff if Plaintiff did not end its relationship with Original Hatchify.

16.     Plaintiff, based on representations of Defendants that the relationship with Original Hatchify was much more lucrative than $18,750.00 per month, agreed to termination of the RK Agreement, memorialized in the form of a resignation email in exchange for a final payment of $10,000.00 paid to Plaintiff ("RK Email"). A copy of the RK Email is attached hereto as **Exhibit B**, and incorporated herein by such reference.

17.     At all times Defendants were expressly aware of the RK Agreement, which Plaintiff had entered into far in advance of working with Defendants.

18.     Plaintiff first began working with Defendants on or around August 25, 2017, over five (5)

4

months after the RK Agreement was executed, and over eight (8) months when Plaintiff first began providing services to RK.

19.     In consideration for Plaintiff's services in connection with the Project, Defendants agreed via email to pay, and did pay, Plaintiff at a rate of $280.00 per hour from August 25, 2017 through November 30, 2017. Plaintiff received (as an independent contractor) a total of $7,224.00 from Original Hatchify for such services, with payments occurring on November 7, 2017 ($1,960.00); January 3, 2017 ($1,820.00); February 1, 2018 ($1,722.00); and February 6, 2018 ($1,722.00).

20.     At that time, Plaintiff agreed to perform work for Original Hatchify related to the review of technical documentation, as well as the creation of technical architecture for Original Hatchify's data structures, code bases, and systems designs ("Project"), which Hatchify still uses to this day.

21.     On or around November 30, 2017, the parties entered into a Master Service Agreement by and between Original Hatchify and Plaintiff (doing business at the time under Hanson and Marcus Consulting Partnership) for services in connection with Project ("MSA"). A copy of the MSA is attached hereto as **Exhibit C**, and incorporated herein by reference.

22.     Pursuant to the terms of the MSA, Plaintiff would complete the Project for $130,000.00.

23.     As part of the MSA, Plaintiff engaged two other individuals to assist in the Project, Michael Marcus and Dmitry Pavluk, whom Plaintiff paid directly.

24.     Plaintiff completed the Project on March 1, 2018, three (3) months ahead of schedule, which was already substantially quicker than third parties who had bid on the Project, and for half of the amount sought by such third parties.

25.     At the time of its completion, Original Hatchify had paid Plaintiff directly (as an independent contractor) half of the amount owed under the MSA, specifically, $65,000.00, with payments occurring on December 6, 2017 ($15,000.00); January 8, 2018 ($25,000.00); and February 6, 2018 ($25,000.00), leaving an unpaid Project balance of $65,000.00.

26.     Original Hatchify requested that Plaintiff continue working with it beyond the scope of the MSA under a monthly billing rate of $18,000.00 per month ("Oral Agreement"), reflective of the $18,750.00 amount paid by RK for similar services, and in line with the $280 per hour rate that started Plaintiff's relationship with Original Hatchify (estimating roughly 65 hours per month).

27.     Plaintiff was induced to enter such Oral Agreement as he was informed by Mr. Bache and Mr. Violante that Original Hatchify had over 1,000 clients that needed to be onboarded who would be paying $2,000.00 - $10,000.00 per month.

28.     From March 1, 2018 through May 2018, Plaintiff provided services under the Oral Agreement in lieu of working with other parties, with the exception of RK, and he and Dmitry combined provided roughly 65 hours per month toward such services, with Plaintiff paying Dmitry $12,000.00 per month.

29.     Original Hatchify paid Plaintiff $36,000.00 for these services, with payment occurring on March 7, 2018 ($18,000.00), and April 10, 2018 ($18,000.00), leaving an unpaid balance of $18,000.00 for May 2018 services.

30.     In May 2018, and on multiple occasions prior thereto, Original Hatchify solicited Plaintiff to become a full-time employee of Original Hatchify. Plaintiff was unable to agree to

such relationship, as he explained to Defendants, due to his prior and ongoing relationship with RK, which was much more lucrative than his relationship with Hatchify.

31.    From August 2017 through April 2018, Plaintiff (as an independent contractor) had received $190,103.95 from RK through the RK Agreement, $81,879.95 more than what he received from Original Hatchify during such time.

32.    Given that Plaintiff was unable to accept an offer of employment with Original Hatchify, in May 2018 Plaintiff was presented with an offer by Mr. Bache and Mr. Violante to become a one-third (1/3) shareholder of Original Hatchify in light of its difficulties to continue payment under the existing pay structure.

33.    Mr. Bache and Mr. Violante represented at such time (May 2018) to Plaintiff that such arrangement had huge upside of Plaintiff making tens of millions of dollars; specifically, Mr. Bache and Mr. Violante represented that Original Hatchify was valued at $50,000,000.00, and promised exit within two (2) years of $100,000,000.00.

34.    Mr. Bache and Mr. Violante requested that Plaintiff needed to work 40-60+ hours per week to make sure that the software created as part of the Project ("Software") was completed in time.

35.    Mr. Bache and Mr. Violante further requested that Plaintiff recruit additional engineering to help the Original Hatchify grow because they now had 'thousands of clients ready to onboard but the tech wasn't good enough yet'.

36.    Mr. Bache and Mr. Violante specifically represented to Plaintiff that the Software would need to be completed quickly as Original Hatchify had 1000s of customers who had pre-purchased the Software, equating to millions of dollars in sales.

7

37.     In response thereto, Plaintiff requested that the offer be memorialized in writing, which Mr. Bache and Mr. Violante represented would be forthcoming.

38.     Defendants ceased all payment to Plaintiff at this time, and Plaintiff, believing he was a one-third (1/3) shareholder of Original Hatchify, continued to work on the Software and provide other services to Hatchify.

39.     Finally, Plaintiff's shares of Original Hatchify were memorized in a Stock Grant Notice dated June 22, 2018 (the "Stock Grant"), which was signed by both Plaintiff and Mr. Bache on behalf of Original Hatchify. At this time, only Original Hatchify was in existence.

40.     A copy of the Stock Grant was executed on June 29, 2018, is attached hereto as **Exhibit D**, and incorporated herein by reference.

41.     The Stock Grant provided Plaintiff with 10,000 shares of Voting Common Stock, with 5,000 shares vesting immediately and the remaining shares vesting according to a vesting schedule beginning April 30, 2019.

42.     The Stock Grant Notice referenced a 2018 Stock Grants Plan (the "Plan").

43.     The Plan was not provided to Plaintiff despite request.

44.     Mr. Bache and Mr. Violante continued to represent to Plaintiff that such arrangement had a huge upside of Plaintiff making tens of millions of dollars.

45.     Relying upon this arrangement, from late May 2018 through December 2018, Plaintiff worked over 60+ hours per week, and sometimes up to and exceeding 100 hours, in an effort to complete the Software, as well as recruiting engineers and engaging in other business on behalf of Original Hatchify.

46.     In an effort to provide Plaintiff with a stipend during this time given the substantial

commitment required by Plaintiff that took him away from his other business (e.g., RK

Agreement), Mr. Bache and Mr. Violante, Original Hatchify's only other two (2) shareholders,

agreed to provide Plaintiff (as an independent contractor) with a monthly stipend of $6,000.00

per month, with payments occurring on October 11, 2018 ($6,000.00), November 14, 2018

($6,000.00), December 18, 2018 ($6,000.00), January 11, 2019 ($6,000.00), and February 12,

2019 ($6,000.00).

47.     Finally, in December 2018, Plaintiff learned that Original Hatchify never had 1000s of

customers who had pre-purchased the Software, equating to millions of dollars in sales, or that

Original Hatchify was worth anywhere near $50,000,000.00. These statements were blatant

misrepresentations by Mr. Bache and Mr. Violante, Original Hatchify's only other two (2)

shareholders, made in an effort to induce Plaintiff to continue to work on the Software.

48.     Mr. Bache and Mr. Violante, clearly recognizing they had been caught in a lie, presented

Plaintiff with a "Confidentiality, Intellectual Property Assignment, and Non-Solicitation

Agreement" with an effective back-date of March 1, 2018 ("CIN Agreement").

49.     Plaintiff was instructed that he execute the CIN Agreement if he wanted his shares to vest

under the Stock Grant.

50.     Mr. Bache and Mr. Violante continued to represent to Plaintiff that while his continued

work on the Software as a shareholder may not be worth tens of millions of dollars, it still had an

upside to make him millions of dollars under the Stock Grant.

51.     The CIN Agreement was executed on December 14, 2018, is attached hereto as **Exhibit**

**E**, and incorporated herein by reference.

52.     Upon information and belief, Original Hatchify utilized the CIN Agreement as the basis

to cause RK to terminate the RK Agreement with Plaintiff, knowingly leaving Plaintiff to rely solely on Original Hatchify for any income.

53.     In February 2019, Plaintiff was provided with another Stock Grant Notice (the "Second Stock Grant"), to better reflect the parties' prior arrangement, and was signed by both Plaintiff and Mr. Bache, on behalf of Original Hatchify. At this time, still only Original Hatchify was in existence. A copy of the Second Stock Grant is attached hereto as **Exhibit F**, and incorporated herein by reference.

54.     The Second Stock Grant identified that Plaintiff currently held 5,000 Shares of Voting Common Stock and provided Plaintiff with an additional 15,000 shares of Voting Common Stock, with 5,000 shares vesting on March 31, 2019; 5,000 shares vesting on June 30, 2019; and the remaining 5,000 shares vesting on September 30, 2019.

55.     The Second Stock Grant Notice referenced the Plan.

56.     The Plan was again not provided to Plaintiff despite request.

57.     In February 2018, less than one week after receiving the Second Stock Grant Notice, Original Hatchify terminated its relationship with Plaintiff before any further shares could vest as identified in the Stock Grant or Second Stock Grant.

58.     On March 8, 2019, Original Hatchify, through its counsel and via email only, that Hatchify would repurchase all 5,000 of Plaintiff's shares for the price of $5.00 per share, as purportedly agreed in the Plan.  Attached to this email was a copy of the Plan, attached hereto as **Exhibit G**, and incorporated herein by reference.

59.     Upon review, the Plan purports to allow Original Hatchify to repurchase shares under the Stock Grant or Second Stock Grant at a mere $5.00 per share, or $25,000.00 for 5,000 shares;

meaning that no matter what, the shares maintain a maximum value of $5.00 per share under the Plan.

60.     Plaintiff immediately responded to Original Hatchify, through its counsel, that this must be a clerical error, believing at first glance that the as the shares were at least worth $250,000.00, if not considerably more.

61.     Plaintiff worked on the Software over sixty (60) hours per week, and many times up to one hundred (100) hours, for approximately thirty-nine (39) weeks spanning May 2018 through February 2019, equating to somewhere between 2,200 – 3,900 hours; the former calculated by multiple 60 hours per week by 39 weeks (60 x 39), and the latter calculated by multiple 100 hours per week by 39 weeks (100 x 39).

62.     Plaintiff received a total of $36,000.00, comprising of a $6,000.00 per month stipend over five (5) months, from Original Hatchify from May 2018 through February 2019, which translates to an hourly rate between $9.23 – $16.36 per hour; the former calculated by dividing $36,000.00 by 3,900 hours (36,000 / 3,900), and the calculated by dividing $36,000.00 by 2,200 hours (36,000 / 3,900).

63.     Taking Original Hatchify's position that the Plaintiff's shares are worth only $25,000.00, this would mean that Plaintiff would have earned a total of $61,000.00 for his work on the Software from May 2018 through February 2019, which translates to an hourly rate between $15.64 – $27.72 per hour; the former calculated by dividing $61,000.00 by 3,900 hours (61,000 / 3,900), and the calculated by dividing $61,000.00 by 2,200 hours (61,000 / 3,900).

64.     At Plaintiff's standard rate of $280.00 per hour, which was the amount he received immediately prior to time Original Hatchify stopped paying Plaintiff in May 2018, Plaintiff

11

would have received somewhere between $655,200.00 and $1,092,000.00 between May 2018 and February 2019; the former calculated by multiple 60 hours per week by 39 weeks at $280.00 per hour (60 x 39 x $280.00), and the latter calculated by multiple 100 hours per week by 39 weeks at $280.00 per hour (100 x 39 x $280.00).

65.    Had Plaintiff known he would have received only $61,000.00 in a best-case scenario from Original Hatchify for his work on the Software between May 2018 and February 2019, there is absolutely no way Plaintiff would have continued his relationship with Original Hatchify, Mr. Bache, or Mr. Violante in May 2018, and lose the ability to earn between $655,200.00 and $1,092,000.00, from Original Hatchify or other parties.

66.    Plaintiff's relationship was terminated by Original Hatchify on February 22, 2019.

67.    Original Hatchify sent an email on March 8, 2019 *allegedly* exercising its right to repurchase Plaintiff's 5,000 shares, but with an offer to pay a lump sum of $25,000.00.

68.    Provision 3 of the Plan permits Original Hatchify to repurchase Plaintiff's shares over a 12-month period of time, without any right or ability to prepay the entire balance.

69.    Seven (7) days after sending the March 8, 2019, Hatchify was incorporated in Delaware, without notice to Plaintiff.

70.    On May 9, 2019, Original Hatchify was dissolved, again, without notice to Plaintiff.

71.    As of the date of this Complaint, Original Hatchify is no longer in existence.

72.    Hatchify is nothing more than a *de facto merger* of itself and Original Hatchify.

73.    Hatchify and Original Hatchify both operate under the same name "Hatchify, Inc.".

74.    Original Hatchify's Articles of Incorporation, dated May 29, 2018 ("Articles"), are attached hereto as **Exhibit H** and incorporated herein by such reference.

12

75.     Hatchify's Application for a Certificate of Authority to Transact Business in Virginia as a Foreign Corporation, dated May 2, 2019 ("Application"), along with its Articles of Incorporation, dated March 15, 2019 ("New Articles"), are attached hereto as **Exhibit I** and incorporated herein by such reference.

76.     The Stock Grant, and reaffirmed by the Second Stock Grant, identifies that Plaintiff held 5,000 Voting Common Shares in Original Hatchify.

77.     Original Hatchify's Articles were filed on or about May 29, 2018, and it was dissolved on May 9, 2019.

78.     Pursuant to Paragraph C of the Articles, Plaintiff was entitled to vote on all matters not otherwise specified therein.

79.     At the time Original Hatchify was dissolved in May 9, 2019, Plaintiff still held 5,000 Voting Common Shares, but was not offered the opportunity to vote on such dissolution pursuant to either the Articles or § 13.1-742 of the Virginia Stock Corporation Act (the "Act").

80.     Both Hatchify and Original Hatchify maintain at least some of the same shareholders and same directors, specifically, Mr. Bache and Mr. Violante, and is located in nearly the exact same location, as clearly evidenced in a comparison between the Articles and Application.

81.     Plaintiff is informed and believes, and based thereon alleges, that the Software, Original Hatchify's only asset and created in large part by Plaintiff, was transferred from Original Hatchify to Hatchify, sometime between Hatchify's incorporation on March 15, 2019 and Original Hatchify's dissolution on May 9, 2019.

82.     Pursuant to § 13.1-724 of the Act, as well as Paragraph C of the Articles, Plaintiff was not given the opportunity to vote on the transfer of the Software from Original Hatchify to

Hatchify.

83.    Given the short span between Hatchify's incorporation and Original Hatchify's dissolution of less than two (2) months, in addition to those facts identified *supra*, it is clear that Hatchify maintains any and all successor liability as to Original Hatchify as the surviving entity of a *de factor merger*.

84.    As of the date of this Complaint, Defendants have not compensated Plaintiff (i) the unpaid balance of $65,000.00 owed under the MSA for work performed on the Project; (ii) the unpaid balance of $18,000.00 owed under the Oral Agreement; and (iii) the unpaid balance of at least $619,200.00 for all services performed by Plaintiff between May 2018 and February 2019.

## STATEMENT OF CLAIMS

### COUNT I – TORTIOUS INTERFERENCE WITH A CONTRACT (OR, ALTERNATIVELY, WITH A BUSINESS EXPECTANCY)
(against all Defendants)

85.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

86.    On or about March 13, 2017, Plaintiff entered into the RK Agreement with RK.

87.    The income Plaintiff earned from the RK Agreement was considerable and continued far past the effective date identified in the RK Agreement, resulting in $18,750.00 per month as of November 2018, as supported by the payment made to Plaintiff from RK on November 13, 2018, and as further documented for several months prior.

88.    In December 2018, Original Hatchify demanded that Plaintiff terminate the RK Agreement with RK "or else".

14

89.     In response thereto, Christopher Hussain, Chief Executive Officer of RK, reached out to and discussed with Original Hatchify Plaintiff's continued work under the RK Agreement.

90.     As a result of the communication between RK and Original Hatchify, RK threatened to terminate the RK Agreement with Plaintiff if Plaintiff did not end its relationship with Original Hatchify.

91.     Plaintiff, based on representations of Defendants, now known to be fraudulently made by Defendants, that the relationship with Original Hatchify was much more lucrative than $18,750.00 per month, Plaintiff agreed to termination of the RK Agreement by RK as set forth in the RK Email.

92.     At all times Defendants were expressly aware of the RK Agreement, which Plaintiff had entered into far in advance of working with Defendants and was the only reason that Plaintiff was unable to accept actual employment with Defendants.

93.     Defendants knew that the RK Agreement was Plaintiff's only other source of income.

94.     Defendants used the CIN Agreement as a basis to persuade RK to terminate the RK Agreement with Plaintiff.

95.     Plaintiff was fraudulently induced to enter into the CIN Agreement based on material misrepresentations of facts by Mr. Bache and Mr. Violante that the Stock Notice was worth millions of dollars to Plaintiff when in fact the Stock Notice had a maximum value of $25,000.00 to Plaintiff under the Plan.

96.     Mr. Bache, individually and within the scope of his employment with Original Hatchify, conspired, and employed improper means to interfere with Plaintiff's contract (or business expectancies) with RK.

15

97.     Mr. Violante, individually and within the scope of his employment with Original Hatchify, conspired, and employed improper means to interfere with Plaintiff's contract (or business expectancies) with RK.

98.     Defendants employed improper methods to interfere with Plaintiff's contract (or business expectancies) with RK.  The "improper means" includes, affirming, and mutually agreeing to false statements regarding the value of the Stock Grant, value of Original Hatchify, validity of the CIN Agreement, and terms that existed in the CIN Agreement.

99.     This was particularly malicious, as Mr. Bache and Ms. Violante were the ones who had intimate knowledge of Plaintiff's relationship with RK as his only other source of income.

100.    But for the improper interference of Defendants and misrepresentations of the value of Plaintiff's relationship with Defendants, Plaintiff would continue to realize the income from the RK Agreement (or business expectancies) as set forth in this Complaint.

101.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered and will suffer in the future great damages, including loss of income, lost career and business opportunities and advancement, litigation expenses including attorneys' fees, other past pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, severe mental anguish, stress, pain, suffering, loss of enjoyment of life and other nonpecuniary injury.

102.    Defendant acted under circumstances amounting to a reckless, willful, and wanton disregard of Plaintiff's rights, which justifies the award of punitive damages in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

103.    As a direct, foreseeable, and proximate result of Defendants' interference with the RK Agreement between RK and Plaintiff, or alternatively, Plaintiff's business expectancy of income

16

received from RK, Plaintiff has suffered monetary damages in an amount to be determined at trial, but not less than $412,500.00 in compensatory damages, $350,000.00 in punitive damages, plus court costs, and pre- and post-judgment interest.

<u>COUNT II – BREACH OF CONTRACT</u>
(against Hatchify)

104.     Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

105.     Plaintiff and Original Hatchify entered into the MSA on November 30, 2017 whereby Original Hatchify agreed to pay Plaintiff $130,000.00 by June 1, 2018 for completion of the Project.

106.     Plaintiff completed the Project on March 1, 2018, three (3) months ahead of schedule, which was already substantially quicker than third parties who had bid on the Project, and for half of the amount sought by such third parties.

107.     Plaintiff performed all conditions, covenants, and promises pursuant to the terms of the MSA, except to the extent that such performance was waived, excused, or prevented because of the acts or omissions of Defendants.

108.     At the time of its completion, Original Hatchify had paid Plaintiff directly (as an independent contractor) half of the amount owed under the MSA, specifically, $65,000.00, with payments occurring on December 6, 2017 ($15,000.00); January 8, 2018 ($25,000.00); and February 6, 2018 ($25,000.00), leaving an unpaid Project balance of $65,000.00.

109.     In March 2018, Defendants requested and Plaintiff agreed to continue working with

Original Hatchify on the Software beyond the scope of the MSA under a monthly billing rate of $18,000.00 per month ("Oral Agreement"), reflective of the $18,750.00 amount paid by RK for similar services, and in line with the $280 per hour rate that started Plaintiff's relationship with Original Hatchify (estimating roughly 65 hours per month).

110.    Plaintiff was induced into such oral agreement as he was informed by Mr. Bache and Mr. Violante that Original Hatchify had over 1,000 clients that needed to be onboarded who would be paying $2,000.00 - $10,000.00 per month.

111.    From March 1, 2018 through May 2018, Plaintiff provided post-Project services beyond the scope of the MSA in lieu of working with other parties, with the exception of RK.

112.    Original Hatchify paid Plaintiff $36,000.00 for these services, with payment occurring on March 7, 2018 ($18,000.00), and April 10, 2018 ($18,000.00), leaving an unpaid balance of $18,000.00 for May 2018 services.

113.    Plaintiff performed all conditions, covenants, and promises pursuant to the terms such oral agreement, except to the extent that such performance was waived, excused, or prevented because of the acts or omissions of Defendants.

114.    As a direct, foreseeable, and proximate result of Original Hatchify's breach of contract with Plaintiff as to both the MSA and Oral Agreement, Plaintiff has suffered monetary damages in an amount to be determined at trial, but not less than $83,000.00 in compensatory damages, plus court costs, and pre- and post-judgment interest.

COUNT III – QUANTUM MERUIT/UNJUST ENRICHMENT<br>(against all Defendants)

115.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in

full.

116.    Plaintiff first began working with Defendants on the Project or around August 25, 2017.

117.    In consideration for Plaintiff's services in connection with the Project and prior to entering into the MSA, Defendants agreed via email to pay, and did pay, Plaintiff at a rate of $280.00 per hour from August 25, 2017 through November 30, 2017. Plaintiff received (as an independent contractor) a total of $7,224.00 from Original Hatchify for such services, with payments occurring on November 7, 2017 ($1,960.00); January 3, 2017 ($1,820.00); February 1, 2018 ($1,722.00); and February 6, 2018 ($1,722.00).

118.    Once the Project was completed under the terms of the MSA, Defendants requested that Plaintiff continue working on the Software beyond the scope of the MSA under a monthly billing rate of $18,000.00 per month, reflective of the $18,750.00 amount paid by RK for similar services, and in line with the $280 per hour rate that started Plaintiff's relationship with Original Hatchify (estimating roughly 65 hours per month).

119.    Plaintiff worked on the Software over sixty (60) hours per week, and many times up to one hundred (100) hours, for approximately thirty-nine (39) weeks spanning May 2018 through February 2019, equating to somewhere between 2,200 – 3,900 hours; the former calculated by multiple 60 hours per week by 39 weeks (60 x 39), and the latter calculated by multiple 100 hours per week by 39 weeks (100 x 39).

120.    Defendants had knowledge of the benefits conferred by Plaintiff, and, at all times, encouraged, accepted, and asked for continued work and services of Plaintiff as related to the work performed by Plaintiff on behalf of Defendants.

121.    Defendants, at the time Plaintiff performed the services at issue, were aware and/or had reasonable notice that Plaintiff expected to be paid his standard hourly rate of $280 per hour for all services worked.

122.    Defendants accepted, used, and enjoyed the services and labor Plaintiff provided between May 2018 and February 2019.

123.    Circumstances are such that it would be inequitable for Defendant to retain the benefits of Plaintiff's services without providing fair compensation for such services.

124.    Defendants would be unjustly enriched in an amount between $655,200.00 and $1,092,000.00 if they were allowed to retain the benefit of the services and labor Plaintiff provided without fully compensating Plaintiff therefor.

125.    Defendants' failure to pay Plaintiff the reasonable value of his services has caused and will continue to cause Plaintiff to incur actual damages.

126.    Plaintiff received a total of $36,000.00, comprising of a $6,000.00 per month stipend over five (5) months, from Original Hatchify from May 2018 through February 2019.

127.    At Plaintiff's standard rate of $280.00 per hour, Plaintiff is owed somewhere between $655,200.00 and $1,092,000.00 between May 2018 and February 2019, less the $36,000.00 received.

128.    As a direct, foreseeable, and proximate result of Defendants' unjust enrichment as to services Plaintiff provided on the Software without adequate compensation, Plaintiff has suffered monetary damages in an amount to be determined at trial, but not less than $619,200.00 in compensatory damages, plus court costs, and pre- and post-judgment interest.

COUNT IV – FRAUD IN THE INDUCEMENT

20

(against all Defendants)

129.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

130.    Plaintiff is informed and believes, and based thereon alleges, that Defendants made multiple misrepresentations of material fact, knowingly and intentionally, with the intent to mislead Plaintiff, which Plaintiff relied upon and as a result was damaged by such misrepresentations.

131.    Plaintiff learned that the following material facts were untrue in December 2018 (subparagraphs a-d below, collectively, "December 2018 Misrepresentations"):

   a.   In an effort to induce Plaintiff to continue working with Defendants under the Oral Agreement spanning March 2018 and May 2018, and delay of payment of the outstanding balance of $65,000.00 for work on the Project, Mr. Bache and Mr. Violante represented that Original Hatchify had over 1,000 clients that needed to be onboarded who would be paying $2,000.00 - $10,000.00 per month. Plaintiff discovered in December 2018 that Original Hatchify did not have anywhere near 1,000 clients, let alone more than few clients, and was the reason that Defendants were unable to continue pay Plaintiff $18,000.00 per month after April 2018.

   b.   In an effort to induce Plaintiff to continue working with Defendants on the Software from May 2018 through December 2018 and execute the Stock Grant, Mr. Bache and Mr. Violante represented that Plaintiff would be a one-third (1/3) shareholder of Original Hatchify. Plaintiff discovered in December 2018 that Hatchify had no

21

intention of permitting Plaintiff to become a one-third (1/3) shareholder and that the Stock Plan actually only represented five percent (5%) of the total shares of Original Hatchify.

c. In an effort to induce Plaintiff to continue working with Defendants on the Software from May 2018 through December 2018 and execute the Stock Grant, Mr. Bache and Mr. Violante represented to Plaintiff that he stood to make tens of millions of dollars as Original Hatchify was valued at $50,000,000.00 and promised an exit within two (2) years of $100,000,000.00. Plaintiff discovered in December 2018 that Original Hatchify had a value of less than $8,000.000.

d. In an effort to induce Plaintiff to work in excess of 60+ hours per week, and often around or over 100 hours in a week, from May 2018 through December 2018, Mr. Bache and Mr. Violante represented to Plaintiff that the Software would need to be completed quickly as Original Hatchify had 1000s of customers who had pre-purchased the Software, equating to millions of dollars in sales. Plaintiff discovered in December 2018 that Original Hatchify did not have anywhere near 1,000 clients, let alone more than few clients, and that Defendants had used him without adequate compensation for his services.

132. Plaintiff learned that the following material facts were untrue in March 2019 (subparagraphs a-c below, collectively, "March 2019 Misrepresentations"):

a. In an effort to induce Plaintiff to execute the CIN Agreement, Mr. Bache and Mr. Violante represented to Plaintiff that if he wanted his shares to vest under the Stock Grant, he was required to execute the CIN Agreement. Plaintiff discovered in March

22

2019 that none of his shares subject to vesting would vest under the Stock Grant or Second Stock Grant.

b.  In an effort to induce Plaintiff to execute the CIN Agreement, and still not having received the Stock Plan despite request, Mr. Bache and Mr. Violante continued to represent to Plaintiff that while his continued work on the Software as a shareholder may not be worth tens of millions of dollars, it still had an upside to make him millions of dollars under the Stock Grant. Plaintiff discovered in March 2019 upon finally receiving a copy of the Plan that his shares had a maximum value at all times of $25,000.00.

c.  In an effort to induce Plaintiff to execute the Second Stock Grant, and still not having received the Stock Plan despite request, Mr. Bache and Mr. Violante continued to represent to Plaintiff that while his continued work on the Software as a shareholder may not be worth tens of millions of dollars, it still had an upside to make him millions of dollars under the Second Stock Grant. Plaintiff discovered in March 2019 upon finally receiving a copy of the Plan that his shares had a maximum value at all times of $25,000.00.

133.    The pre-contract misrepresentations contained in both the December 2018 Misrepresentations and March 2019 Misrepresentations and conduct of Defendants were material facts as they directly influenced Plaintiff to enter into the Oral Agreement, the Stock Grant, the CNI Agreement, the Second Stock Grant, and to continue all work on the Software from May 2018 through February 2019 without adequate compensation (collectively, "Contracts").

134.    Based solely on the pre-Contracts, as applicable, material misrepresentations of

Defendants, Plaintiff entered into the Contracts, as applicable.

135.    Without the December 2018 Misrepresentations and March 2019 Misrepresentations from Defendants, Plaintiff would not have entered into any of the Contracts.

136.    The December 2018 Misrepresentations and March 2019 Misrepresentations were made with knowledge of their falsity and with the intent to deceive Plaintiff.

137.    Defendants suppressed, concealed, or misrepresented these facts with the intent to induce reliance and to defraud Plaintiff.

138.    Defendants acted under circumstances amounting to a reckless, willful, and wanton disregard of Plaintiff's rights, which justifies the award of punitive damages in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

139.    As a direct, foreseeable, and proximate result of Defendants' fraudulent inducement to deceive Plaintiff to enter into the Contracts, Plaintiff has suffered monetary damages in an amount to be determined at trial, but not less than $1,000,000.00 in compensatory damages, $350,000.00 in punitive damages, plus court costs, and pre- and post-judgment interest.

COUNT V – STATUTORY BUSINESS CONSPIRACY
(Virginia Code § 18.2-599 et seq.) AND COMMON LAW CONSPIRACY
(against all Defendants)

140.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

141.    Defendants conspired together to terminate Plaintiff's relationship with RK and to further induce Plaintiff to enter into various Contracts intended for the purposes of Plaintiff completing Original Hatchify's Software without adequate compensation.

24

142.    To accomplish their conspiracy, Defendants relied on fraudulent representations and tortious conduct.

143.    Defendants conspired together to fraudulently induce Plaintiff to enter into multiple Contracts based wholly on the December 2018 Misrepresentations and March 2019 Misrepresentations.

144.    Defendants conspired together to tortiously interfere with Plaintiff's RK Agreement with RK or business expectancy with RK, using the CIN Agreement as the basis for such interference.

145.    Defendants knew of the falsity of the December 2018 Misrepresentations and March 2019 Misrepresentations, including, *inter alia*, statements made in induce Plaintiff to enter into the CIN Agreement.

146.    Defendants acted under circumstances amounting to a reckless, willful, and wanton disregard of Plaintiff's rights, which justifies the award of punitive damages in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

147.    As a direct, foreseeable, and proximate result of Defendants' conspiracy to terminate Plaintiff's relationship with RK and to further induce Plaintiff to enter into various Contracts intended for the purposes of Plaintiff completing Original Hatchify's Software without adequate compensation, Plaintiff has suffered monetary damages in an amount to be determined at trial, but not less than $3,000,000.00 in trebled damages, $350,000.00 in punitive damages, plus court costs, and pre- and post-judgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

25

A.  Enter judgment on Plaintiff's behalf against Defendants;

B.  For compensatory damages in the amount of no less than $3,000,000.00;

C.  A declaration that the Defendants' conduct has been willful, and that Defendant have acted with malice and oppression;

D.  For punitive damages pursuant to Va. Code § 8.01-38.1 in the amount of $350,000.00;

E.  For pre-judgment and post-judgment interest according to law, as applicable; and

F.  For such other relief as this Court may consider just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial for all issues triable by jury, including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: September 16, 2020                    Respectfully submitted,

By: /s/ __Robert Powers_____

Robert Powers, Esq.
Andrea Harris, Esq.
MCCLANAHAN POWERS, PLLC
8133 Leesburg Pike, Suite 130
Vienna, Virginia 22182
Telephone: (703) 520-1326
Facsimile:  (703) 828-0205
Email  rpowers@mcplegal.com
          aharris@mcplegal.com
          pghale@mcplegal.com
*Counsel for Plaintiff*

26

## **CERTIFICATE OF TRANSMISSION**

I hereby certify that the forgoing COMPLAINT with EXHIBITS are being electronically transmitted via the CM/ECF system of the U.S. District Court for the Eastern District of Virginia at https://ecf.vaed.uscourts.gov/ on the date noted below. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date:  September 16, 2020

By: /s/  Robert Powers_____
One of the Attorneys for Plaintiff,
William Hanson

27